Good morning. Please be seated. We have one case set, and we allow 15 minutes per side, and we're not strict clock watchers, but if we go on too long, I will ask you to wrap it up. These are microphones. They're not, they don't work very well, so please modulate your voice accordingly so that we can hear you. Bear in mind that we have read your briefs. We're very familiar with the arguments, so please get to your strongest argument first. When your case is called, approach the podium, tell us your name and who you represent. Please call the first case. Case number 12-3543, Wendy Douglas v. Illinois Department of Employment Security. May it please the Court, I'm Janet Fabiano. I'm the Assistant Attorney General here on behalf of the defendant, Collins. This case is before the Court on the granting of a petition for rehearing. The Court had initially dismissed the appeal for lack of standing. However, as explained in the petition for rehearing, the State defendants did have standing to appeal the Circuit Court's reversal of the Board's decision in this case due to the substantial role they play in implementing Illinois' unemployment insurance program. It is well established that any party to a case may appeal a judgment that is adverse to its interests. Well, you're here, counsel, so we agree with you, so just get to your argument. Oh, you agree there is standing? Yes. Okay. Not necessarily all of us. You're here and we're allowing you to argue, so just go for it. Well, the Circuit, the Department had denied, the Department, the Board of Review had denied the claimant's claim for benefits because they found that she had been discharged for misconduct and the Circuit Court reversed that finding. We would ask that the Court affirm the Department's decision. The standard of review in these types of cases is well established, and the Department's findings should not be reversed unless they are against the manifest weight of the evidence. And ultimately, whether these findings establish misconduct is not a mixed question, which should not be reversed unless it is clearly erroneous. And here the record contained evidence demonstrating that the claimant had violated, whether or not a claimant has committed misconduct depends upon whether or not they have violated a reasonable rule and whether or not it has caused harm to the employer. And here the claimant, and here the evidence does support the Board's finding that the employer had a reasonable rule governing confidentiality and had a rule providing that the employees must have a release of information, that employees must have a release of information before sharing any information with any third parties and that the release must be completed. Does the violation have to be willful or intentional? Yes, and the violation has to be intentional. And here there is evidence that she knew of the policy and that she had violated the policy. The Department, I mean, her employer had... Knowing of the policy and violating the policy, does that make it intentional? Does that make the violation intentional? Yes, if you are aware of a policy and then you violate that policy, yes, that would be a willful violation of the policy, assuming your actions are not due to... What if the policy is ambiguous? Pardon me? What if the policy is ambiguous? Well, again, that is the Department's determination whether or not she is aware of the policy and whether or not she has violated it. No, maybe I'm not asking the question clearly. Being aware of the language of the policy and understanding what the policy means may mean one thing to one employee and something else to another and may mean one thing to the supervisor and something else to the employer. That's what I mean by ambiguity. So what if the policy is ambiguous when it is violated? Is that still an intentional act on the part of the employee? Well, the employee would have to know what the policy is. But, you know, that's not the case. Well, that's my question, though. I mean, regardless of what you think the case is. Well, the question is, was the employee aware that she's violating the policy? And in this case, there was evidence that she... Does she have to understand what the policy is in order to violate it? Well, yes, you would have to understand what a policy is. No, what that policy is. She would have to be aware of what the policy is. But in this case, I mean, there is evidence to demonstrate that she knew what the policy is. There is evidence that the employer had met with her to discuss the confidentiality policy and specifically went over the policy with her. There is evidence that she then came back and met with the employer, again, having a specific question with respect to the release of information. And the employer went over that again with her, saying that she had been inquiring about whether or not the release of information... The employer had explained to her that the release of information had to include every individual that she's releasing the information to and not just the agency at large. So there is evidence that she was aware of the policy. And despite that, maintained blank release of information forms in the file. And therefore, there is evidence to support the department's finding in this case. Explain to me, you know, there's a lot of argument in your briefs about the maintaining of the blank information forms that have been signed. What's... Exactly how is that violative of the policy? Well, the policy requires them to have permission in order to release this information. And the way they would get permission to release the information is to have a release of information that contains who the information is being released to, what particular information is being released, and then having it signed by the individual that is releasing the information. Okay. Was there any evidence of what she was going to do with those blank... those signed forms that were in... What did she use those for? Or do we know? Yes, she did testify that she had been using them to contact other agencies to discuss a particular tenant in the case. So the names of whoever she was going to be contacted would be filled in as she decided to contact that person? That is correct. Without then notifying the person who had signed it that I'm going to do this, I'm going to use your form to contact these people? That is correct. And that's clear from the record, that line of thought? I mean, the record shows that she was doing this. I mean, the record contains the blank releases of information. I mean, again, these are releases that are contained in the file that are simply signed with no information. I think that Justice Rochford's question is a little different. That was mine. She phrased it more artfully. You know, is this clear from the record? I'm not so sure that it's so clear. That's why I'm asking you these questions. There is no question that there are blank forms that are signed in there. Are you saying the record tells us and she testified that this is what she was doing with them and so on? Is that what you're saying? She did testify that she was using the releases when she was contacting the agency. And she would talk to the resident at the same time? That part wasn't clear from the record, was it? I mean, I don't know about each time. She did say that when she was, for one of the particular clients, that when she was, she had to contact a lot of agencies and that she would then, you know, fill in, that she would then fill in the agency? Or the person. The person then that she had talked to. Ms. Fabbio, I've seen the clock is ticking here. Let me go to the standing issue. All right. On rehearing, the state seems to be urging us, almost in a way, without saying it directly, to overturn SPEC and those other, COSENSHAC and those other cases. Now, we could decline to follow COSENSHAC, but we can't overturn SPEC, can we? Because it's from the Supreme Court, if I recall. But this case presents a different situation than SPEC. I mean, SPEC just simply held that when a, that if an agency is a quasi-judicial agency. All right. So in this record, we have basically an administrative law judge who's hearing evidence, swearing in witnesses, and making a decision on facts and law based on the evidence and witnesses. How is that not a quasi-judicial agency? How does that not fall within the definition of someone who has to remain impartial and detached? I mean, the department is charged with administering the entire statute. And as a result, it is given broad responsibilities in doing that. But does the department have a representative at those hearings other than the judge? They don't. I used to do these hearings all the time. I mean, is the employer the employee and the ALJ from the Department of Employment and Security? You don't have a prosecutor there who's defending what happened below, do you? No, but the department's, you know, I mean, what Ron has said is, I mean, if an agency is charged with extensive managerial responsibilities, so they're not just simply a tribunal, then they do have standing to appeal. And here the department has extensive responsibilities. It is charged with administering the statute, has a wide variety of functions in order to do that, and it is charged with administering the funds with respect to pay the benefits. So it is more than just simply a tribunal. It's charged with enacting rules, promulgating rules, explaining the statute. It is charged with ensuring there is compliance with the statute, ensuring that the employers are paying the contributions. But aren't there 150 judges over at the Daly Center who also are in charge of making sure statutes are followed? I mean, I don't see any difference between what you just said and what judges do every day. And when I was on the circuit court, if I got reversed by this court, I couldn't knock on the door of the Supreme Court, could I, and say, hey, the appellate court got it wrong and I was right in the first place. That's up to the parties, isn't it? But the department, the circuit court's not charged with implementing a particular area of law. The department is charged with implementing a particular area of the law. And in doing that, they're given a wide variety of functions in order to do that. They are required to, like I say, they promulgate rules implementing the statute. They are responsible, they have the ability to ensure compliance with the statute, to ensure that the employers are paying the contributions that they owe and their responsibilities can include both investigating or auditing an employer and issuing assessments to the employer and ultimately undertaking collection proceedings in order to get the employer to pay the amount that they owe. In addition to that, they have responsibilities to seek recoupment under certain circumstances. They are responsible for cooperating with the federal government and ensuring that Illinois is complying with the federal regulations. And one of the points you make on rehearing quite strongly is about the federal funding. And there's, I think, an affidavit or a letter stuck in one of the second set of briefs where some bureaucrat basically says, oh, my gosh, you have to change this, you know, without realizing that, you know, the court has declared it to be so. All right. I'm just concerned as to under that theory, all right, that somehow unless you have the right to continue appealing, we lose this money. Well, what if the decision was wrong and the circuit court was, in fact, right in reversing? Is there any kind of review done at the AG's office where you say, well, we're just not going to appeal this one because, hey, you know, this one was messed up and the judge was right. And then does somebody from the federal government knock on your door and say, no, you have to appeal that one, too, you have to appeal everything until you've exhausted all your resources or all your courts? Well, no. I mean, they simply would prefer and let Illinois know that a decision is not, is out of compliance. And then, you know, Illinois would make the decision as to what to do about that. So is there someone from the federal government who monitors these and tells you which cases to appeal and which ones not to appeal? I mean, I don't know whether they're monitoring. But, again, I mean, they do communicate with them, and, again, the department does have a responsibility for ensuring there is compliance with federal law. So, you know, for these reasons we would ask that the court, you know, again, the department's decision in this case was supported by the evidence, and we would ask that the court affirm the department's decision. Thank you. Good morning to each of you, Justices. Good morning. Good morning. May it please the Court, I am Martin Whitaker. I represent Wendy Douglas, who was the claimant below before the department and its Board of Review, the plaintiff in the circuit court, and yet Pelley here. The spec controls the disposition of this case. The spec controlled when Your Honors rendered the Shaw decision and dismissed this case for lack of standing dependent on the holding of Shaw because the holding of Shaw is quite correct. This panel invoked and applied the holding of spec correctly to this set of facts, and it should do so again on reconsideration. Does Braun require us to reexamine the facts that now are before us and that we're hearing? No. The language that appellants rely on from the Braun decision effectively turns on two words, managerial responsibility. As this panel remarked in the original Shaw decision, there is no further gloss on that phrase. There is no analysis of the facts comprising the managerial responsibility of the zoning board in Braun. There's just no explanation of what managerial responsibilities the court found operative or useful in Braun to remark, not hold, but remark that there may be standing for the zoning board in Braun. There may be standing for the zoning board or the retirement? The retirement pension board. Thank you very much. Yeah, I just want to make sure. We're calling into questions back there. There's no further gloss on what managerial responsibilities may bestow standing on an administrative body to become an adverse party, a litigant at the appellate level. But what the state is suggesting here on rehearing, Mr. Whitaker, is a parallel between the Department of Employment Security and the retirement board in Braun in the sense that they have two duties. One is to adjudicate, as a judge would do, but the other one is that they're sitting on this pool of money and they're sort of a guardian or a fiduciary of the money. And at least on the rehearing, they gave us some information as to where the money comes from, other than from the employer, who is the party of the case. And when we issued the first decision, we did not have that information. How does that not move us to the Braun side of the equation? Because the Braun side of the equation included that very question, how much money goes to Mr. Braun? How much was he entitled to? And that's why there were adverse interveners coming to, which is the other distinction of Braun as well. There was actually two real parties in interest on adverse sides of the aisle. There was an appellant and an appellee who were real parties in interest. And the question before the pension board in Braun was, did we calculate the amount right? Did he get the right amount? That is, and unfortunately it doesn't go into that analysis, the Supreme Court in Braun, but that's just a fact of the function of a pension board. And a fact that was issued at issue in Braun, did we calculate the right amount? A pension board is a common law trustee, freighted with all those responsibilities and obligations to have the prudent investor rule, to do the calculations correctly. That is the function of that pension board, and whether that function was properly acquitted was the issue in Braun. It particularly, specifically invoked and involved those issues, those functions of the pension board and the pension board trustees, and why they got real parties in interest on both sides of the table. Those issues aren't at issue here. This is a simple mathematical calculation. There is no discretionary function of the department at issue in this case. You calculate the days, you put it in a calculator, and you figure the amount, and the issue before the, the issue created in this case, and the sole issue before the department and the board of review in this case is, was there misconduct in connection with the work? There is no discretionary function of the department implicated in this case. The payment or nonpayment of benefits to claimants like Ms. Douglas is purely a tribunal act. Did she commit misconduct or not? The calculation proper amount and source of the funding, as were all implicated in Braun, are not at issue here. This case, the functions of the administrative agencies at issue in Braun, is not the function that the Appalachian administrative agencies performed here. The pension board and the defendant here don't have the similar duties of making, of a protector of the funds to make sure that the funds are dispersed according to the law. They do. That's one of the functions of a common law trustee. You pay claimants.  But there is a lot more responsibility, a lot greater in different function of a common law trustee like the pension board trustees in Braun. More responsibilities, more discretionary functions than those performed by the appellants here. To an extent, we're all sort of singing a cappella because the Braun exception to the controlling holding of SPEC is a dust off. It is, as we say in our briefs, not even a holding in that case because whether or not the pension board had standing in that case, the interveners, the true adverse parties, the adverse in interest, did have standing. So even if the pension board didn't have standing, the case would proceed. So the remark that SPEC did not apply to the pension board in Braun is not so much a holding as a remark of Braun. But as I say, and as this panel noted in its original soft jaw decision, that's all we've got. So what the appellants are effectively doing in relying on Braun, sub silencio asking you to broaden the Braun exception is to, in effect, sub silencio overrule SPEC. Say, Braun said more than Braun actually does say. And I would suggest to your honors that that's not a function of the appellate court that you don't have the authority to say Braun actually said more than it actually did and overruled SPEC. It did not do it in explicit terms. You would be amazed, counsel, how many times people come and ask us to overrule the Supreme Court. We always decline. I suspect, Your Honor, there may have been an occasion when I was one of them, too. But I'm not doing so in this case. I want to briefly remark, too, although I didn't anticipate getting to the merits, I largely would like to stand on our briefs, on the merits briefs. Director, it honors attention to the factual portion of our brief, pages 7 and 8, where we try to do a synopsis of the relevant record evidence taken by the appellant tribunal, in this case, about the warnings that Ms. Douglas got about the blank release of information forms. I respectfully suggest that all parties to the case and the tribunal itself, the department itself, and the Board of Review simply were a little inattentive to what happened. The discovery of the release of information forms came at an audit the very month, I think it's December of 2011 or maybe January of 2012, it was on the cusp of the turnover of the year, where her supervisor went back to files, discovered in the summer of 2011, forgive me if the year isn't right, that we had all of these releases of information. Oh, we got a fire for the release of information files that she created in the summer of 2011, and we warned her in October of 2011 that she shouldn't be doing that. She had no prior warning in October of a year about what she did prior to. It can't be a fair warning, giving her, creating the necessary element of misconduct that it was intentional. That's the operative fact, that it can't be intentional unless she had prior warning that what she was doing was a violation of the employer's policy. Does it have to be that specific? I mean, the confidentiality policy was explained to her before. It was not explained to her before the actual actions took place, and that's why I commend to your honors. No explanation? I mean, it is in writing, correct? It's not explicit writing. It's certainly not express that one cannot. The confidentiality, the general confidentiality. The general confidentiality. Where this flows from. Yes, but flow from is not the same as you can't be doing this to this forms. There was no unambiguous warning about the impropriety of creation, getting signatures on these forms, before she actually did it. That wasn't their only concern about confidentiality, though. They also talked about her seeming willingness to divulge or discuss the details of one resident with another,  Wasn't that part of their concern about her not following the confidentiality policy? Whether or not it was a concern, Justice Cunningham wasn't the reason to fire her. They fired her. Well, they obviously think it was. But the contemporaneous records of her firing show, it was the completion of these release of information forms. And she just didn't have warning about the impropriety of that. Specifically, because this is a little, I asked Ms. Fabiano, and I'm not sure I got a clear answer. When did these warnings take place versus when the release of the multiple sign forms were discovered versus when they fired her? That's the timeline I'm looking for, and I can't say it's real clear. I agree, Your Honor, that it's not real clear. That's why I tried to do it in what I hoped was a handy dandy little chart that we put in the timeline. But referring to where I quote the record evidence, that the meeting occurred in September of 2011, when Ms. Washington took her aside and started looking through these files that occurred in the audit. But the actual creation of these blank forms with the signatures occurred previously. She got fired for the things she was only warned about after the fact. That's not a warning. That's a pretext. When was she told that she needed to get a consent from every individual? That's disputed, and I don't think there's clear evidence that that actually ever occurred. Ms. Douglas herself testified that she never understood that and never got clear direction, that she had to have contemporaneous signatures and fill out the form for each particular entity that wanted information. That's certainly not clear from the record. But the actual discovery of the delict that caused the firing postdates the creation of the firing, postdates the creation of the forms that did it, and the warning also postdates the action that caused her to be fired. It cannot be misconduct if she wasn't warned that her actions transgressed company policy. Well, when they discovered all these forms, and I asked Ms. Fabiano, but again, the forms that were discovered, all of these multiple forms that were signed but not completed with any individual names, you're suggesting and your brief suggests that that was, those forms were created sometime prior, and then when they discovered it later, they used that to fire her, so it was like double-dipping. Since they warned her about it, they didn't really discover it until later, but it wasn't created later. It was created earlier. I mean, this is not as cut and dried as you and your co-counsel seem to suggest it is, and I'm having some difficulty following the timeline. Well, then I would suggest. Tell me again, you know, just the timeline of when these, because that's the main, they throw in some other, there are some other confidentiality issues, but as I understand it, the main reason for her being terminated had to do with these multiple signed but not completed. Release of information. Release of information forms. When were those created? When was she warned about it? They were created sometime in the summer of 2011, and here I'm relying, looking at our, a taxonomy of the evidence here, so I'm relying on the chart, which I direct Your Honor's attention to. She, we know, the evidence does show that as early as June 2011, some of these release of information forms were pre-signed and put in client's files. Now, because everything's not filled in, it's just the nature of the case we're dealing with, that we don't have dates for all of them, but the evidence on these, Ms. Cordish's file and Rachel Plummer's file, show that they were created in the summer. So in the summer of 2011, she starts or is continuing to create forms pre-signed, the release of information forms. In September of 2011 is the first time there is a suggestion from any of her supervisors that you shouldn't be doing that. So the so-called warning is not a warning about your future conduct. It's about past conduct. She's not informed if there's any transgression of her employer's policies until after it's already done. Okay, well, it's okay to warn about past conduct but not to do it again in the future. Okay, so after she got that warning, were there more forms that were created or are we still talking about the same forms that were then used as the basis for the termination? The record doesn't show. All we know is the forms from the summer of 2011. I'm morally confident, I'm not misspeaking in saying that the forms that caused her, that were discovered, there's no adequate evidence in the record to show whether they were created before or after. All we know is that the forms that do have dates predate the so-called warning before Ms. Douglas can reasonably be charged with having noticed what the pre-signed ROI forms somehow transgresses her employer's policies. Whether that occurred afterward, I don't think that the record shows that. So I don't think that the employer who had the burden of proof on this issue has borne that burden of proof and shown that after the warning came, she continued to transgress the policy. Now, we're not disputing, of course, that they had the right to fire her, but they did fire her, but that's never an issue on an unemployment compensation case. The issue is whether it was misconduct, willful and harmful to the employee, following a prior warning that this behavior transgresses the policy. There is no such clear evidence on the record that that prior warning came so that Ms. Douglas should be charged with misconduct, and it is the employer's burden of proof on that issue to show that the warning came prior to the actual action that caused the firing and comprises misconduct. The employer below just simply did not bear its burden of proof on this issue, and the Circuit Court was correct in holding that Ms. Douglas was entitled to benefits under the Act. Thank you, counsel. Thank you, Your Honor. Brief rebuttal, Ms. Fabiano. Emphasis on brief. There is evidence before the board to have supported the finding that the claimant was aware of the confidentiality policy and she violated it. As I indicated, firstly, in September they had met with her twice. Her supervisor had met with her to go over and explain the confidentiality policy to her, and the supervisor testified that a couple days later she came back to the supervisor to inquire specifically about the release of information and whether or not she needed to put the individual person in, and the supervisor made it clear to her that she had to make sure that she had a release for every specific person and not just a blanket release for an agency, but she needed the individual person for that. In addition, a known rule can be a step. Okay, but let's focus on these forms for a moment, because that was the catalyst that got this woman fired. After she met with the supervisor and asked the question, because obviously that's why I asked you about ambiguity before, she must have thought it was ambiguous. And she did say that. She testified that it wasn't clear, so she asked her supervisor again. After that, do you have in the record forms that post-date that conversation where she did the same thing that she was counseled not to do? There is a form in the record that is dated after she had met with the supervisor, so that it was prepared afterwards. But also, these forms were all still maintained in the file after that time. They were discovered in December. Yeah, but that doesn't make any difference for purposes of this discussion. If they predated the conversation and she was counseled this is wrong, don't do this, they would presumably still be in the file, but they would have been predated. My question is just much more specific. Is there evidence in the record that shows that there was this conduct in terms of preparing unsigned forms that were just uncompleted forms that were signed that post-dated the conversation that took place in September with her supervisor where she asked for clarity and was told this is a clear policy, you cannot do this. Is there such a thing in the record? Yes, there is one of the forms. The record contains multiple forms. One of the forms was dated for October, so it was after the September meeting. But in addition, the courts have held that a known rule can be established by a common sense realization that certain conduct is harmful to the employer. That's true, Ms. Fabiano, but I think your opponent's point is once you give her the warning, if you give her the warning and she says, okay, now I understand, I'm not going to do it again, you can't go back and then fire her for the same thing that you gave her the warning for if she didn't do it again. So that's what I'm trying to find out. Did she do it again? It's as simple as that. Well, there is one of the forms is dated subsequent to that. And again, there is evidence in the record, too, that she violated this. You know, she did testify that. Remember, this is rebuttal, counsel, so you're only responding to what he said or to our questions. So again, I mean, there is evidence to demonstrate that she is aware of this rule, that she had been violating the rule. And your evidence is that there is one form in the record that has an October date. Yes, and that the forms were still contained within the files. Yeah, but those were the forms that she was counseled about before, so from my perspective, that does not support your argument. Your argument has to be based on something that happened after she was told not to do this. So the stuff that was there before, that's not what I'm asking you about. Okay. Anything else, counsel? No. So we would ask that the department's decision be affirmed in this case. Okay. Thank you very much. Thank you both for your argument. This matter will be taken under advisement. Court's adjourned.